UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

GANGA BHAVANI MANTENA,

                    Plaintiff,

        -against-

MARK J. HAZUDA, *Director of the United States*
*Citizenship and Immigration Services' Nebraska*
*Services Center, et al.*,

                  Defendants.

------------------------------------------------------------------------

17cv5142

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        The Department of Homeland Security ("DHS"), United States Citizenship and

Immigration Services ("USCIS"), Mark J. Hazuda, and Kristine Crandall (collectively, the

"Government") move to dismiss Ganga Bhavani Mantena's action brought under the

Administrative Procedures Act ("APA") to set aside various adjudications of Mantena's

immigration applications. For the following reasons, the Government's motion is denied.

BACKGROUND

        The allegations set forth in the Complaint are presumed true on this motion.

Mantena is an employer-sponsored Indian immigrant seeking permanent residence in the United

States. (Second Am. Compl., ECF No. 67 ("SAC") ¶ 4, at 3.)[1] There are three steps to

achieving permanent residency for employer-sponsored immigrants already in the United States:

(1) the Department of Labor must issue an alien labor certification to the immigrant's employer

("Labor Certification"); (2) USCIS must approve the employer's immigrant visa petition, filed

---

[1] The Second Amended Complaint contains non-consecutive and repeating pagination. As such, this Court cites to both the paragraph number and PDF page number.

via Form I-140 (an "Immigrant Petition"); and (3) the immigrant must obtain approval of a Form I-485 application for adjustment of status (an "Application to Adjust Status"). <u>Mantena v. Johnson</u>, 809 F.3d 721, 724–25 (2d Cir. 2015). Upon completion of these steps, the alien becomes a lawful permanent resident and receives a green card. <u>Johnson</u>, 809 F.3d at 725. But "[t]he final step cannot take place until a permanent residency visa is available for the immigrant." <u>Johnson</u>, 809 F.3d at 725. Availability is limited, so immigrants often wait years, and an immigrant's "place in line is set by the date that her alien labor certification was granted: her 'priority date.'" <u>Johnson</u>, 809 F.3d at 725.

      Mantena came to the United States in 2000 to work as a software engineer. (SAC ¶ 12, at 4.) In 2003, she started working at Visions Systems Group, Inc. ("VSG"). (SAC ¶¶ 12–13, at 4.) That year, VSG filed an H-1B visa petition on Mantena's behalf, and that application was approved. (SAC ¶ 13, at 4.) VSG also applied for a Labor Certification, which was certified in January 2006. (SAC ¶ 14, at 5.) In September 2006, again on Mantena's behalf, VSG filed an Immigrant Petition with USCIS (the "VSG Immigrant Petition"). (SAC ¶ 15, at 5.) USCIS approved the VSG Immigrant Petition in November 2006. (SAC ¶ 15, at 5.) In July 2007, while still working at VSG, Mantena filed her first Application to Adjust Status (the "First Application to Adjust Status"). (SAC ¶ 16, at 5.) In December 2009, while that application was pending, Mantena moved from VSG to CNC Consulting, Inc. ("CNC") and notified USCIS. (SAC ¶ 17, at 5.) Under "porting" rules, immigrants with pending Applications to Adjust Status may keep their applications pending despite changing jobs. (SAC ¶ 17, at 5.) <u>See</u> 8 U.S.C. § 1154(j).

      In October 2010, the president of VSG pleaded guilty to making fraudulent statements on a "non-immigrant petition filed by VSG on behalf" of an employee. (SAC ¶ 18, at 6.) Mantena did not know that employee and alleges that "the criminal matter against [VSG's

2

president] had no connection to any petition or application filed on [her] behalf." (SAC ¶ 18, at 6.) However, in June 2012, USCIS issued a Notice of Intent to Revoke ("NOIR") the VSG Immigrant Petition because USCIS believed that "all cases filed by VSG . . . may [have] be[en] fraudulent." (SAC ¶¶ 19, 20, at 6.) Mantena claims that the NOIR was sent only to VSG, despite USCIS's knowledge that Mantena had left VSG for CNC and that VSG was "out of business and could not respond to the NOIR." (SAC ¶ 19, at 6; ¶ 17, at 5.) Indeed, VSG did not respond. (SAC ¶ 11, at 6.)

 Accordingly, USCIS revoked the VSG Immigrant Petition in October 2012, based in part on VSG's failure to respond to the NOIR. (SAC ¶ 12, at 7.) USCIS did not notify Mantena of the revocation. (SAC ¶ 12, at 7.) In November 2012, and because the VSG Immigrant Petition had been revoked, USCIS denied Mantena's First Application to Adjust Status. (SAC ¶¶ 12–13, at 7.) Mantena filed a motion to re-open that denial and requested a reversal of the revocation of the VSG Immigrant Petition, but USCIS denied that motion in February 2013. (SAC ¶¶ 13–14, at 7.) She then filed a second motion to re-open/reconsider in March 2013, but USCIS denied that motion as well. (SAC ¶¶ 16–17, at 7.) As such, Mantena brought an action in this District to challenge the revocation of her VSG Immigrant Petition and denial of her First Application to Adjust Status. The district court dismissed that case in June 2014, and Mantena appealed to the Second Circuit. See Mantena v. Napolitano, 2014 WL 2781847 (S.D.N.Y. June 19, 2014).

 In October 2014, Mantena filed a second Application to Adjust Status with USCIS (the "Second Application to Adjust Status"). (SAC ¶ 19, at 7.) That application was supported by an approved Immigrant Petition filed by Mastech Inc. (the "Mastech Immigrant Petition") on Mantena's behalf. (SAC ¶ 20, at 7–8.) In addition, Mantena filed Forms I-765 (an

"Application for Employment Authorization") and I-131 (an "Application for Advance Parole") with USCIS. (SAC ¶¶ 21–22, at 8.) [2] To be approved under Mantena's circumstances, these applications required a pending Application to Adjust Status. See 8 C.F.R. § 274a.12(c)(9). (See SAC ¶¶ 21, 24, at 8.) In January 2015, USCIS denied Mantena's Second Application to Adjust Status, claiming that the priority date of the VSG Immigrant Petition could not transfer to the Mastech Immigrant Petition. (SAC ¶ 30, at 9–10.) Because the Second Application to Adjust Status was no longer pending, USCIS denied Mantena's Applications for Employment Authorization and for Advance Parole. (SAC ¶ 31, at 10.)

In December 2015, the Second Circuit reversed the district court's holding in Mantena's case. See Mantena v. Johnson, 809 F.3d 721 (2d Cir. 2015). Thereafter, the district court remanded the VSG Immigrant Petition to USCIS, and both of Mantena's Applications to Adjust Status were re-opened. (SAC ¶ 10, at 13.) In October 2016, USCIS's Administrative Appeals Office ("AAO") invited Mantena and CNC to file a brief related to the VSG Immigrant Petition, but Mantena and CNC sent the AAO a notice to withdraw the VSG Immigrant Petition. (SAC ¶¶ 12–13, at 13–14.) However, in December 2016, USCIS issued another NOIR to Mantena, stating that USCIS disputed the effectiveness of the attempted withdrawal of the VSG Immigrant Petition and that it sought to revoke it and invalidate its underlying Labor Certification. (SAC ¶ 14, at 14.) USCIS revoked the VSG Immigrant Petition in February 2017. (SAC ¶ 21, at 15–16.) Mantena appealed in March 2017, and while that appeal was pending, USCIS issued decisions denying both of Mantena's Applications to Adjust Status, once again citing the revoked VSG Immigrant Petition. (SAC ¶¶ 24–25, at 16.) Though unclear from the

---

[2] Applications for Employment Authorization are made to receive a "work permit" in the United States. Applications for Advance Parole are made to achieve authorization to appear at a United States port-of-entry to seek parole (i.e., physical entry) into the United States.

Second Amended Complaint, Mantena presumably brought this action in response to those denials.

Shortly after Mantena filed this action, USCIS sua sponte re-opened its decision to revoke the VSG Immigrant Petition and deny Mantena's Applications to Adjust Status. (SAC ¶ 34, at 16.) In response, Mantena interposed her First Amended Complaint in September 2017, asking this Court to direct USCIS to make final decisions on the VSG Immigrant Petition and Applications to Adjust Status. (SAC ¶ 35, at 16–17.) However, in late-October/early-November 2017, USCIS once again revoked the VSG Immigrant Petition and accordingly denied Mantena's Applications to Adjust Status. (SAC ¶ 35, at 17.) Mantena appealed to the AAO on November 16, 2017, and that appeal is still pending. (SAC ¶¶ 38–39, at 17–18.) In January 2018, Mantena filed her Second Amended Complaint, asking this Court to set aside the denials of her Applications to Adjust Status, for Employment Authorization, and for Advance Parole. (SAC ¶ 40, at 18; ¶¶ 1–2, at 2.) Nine days later, USCIS changed its stance on all four applications by once again re-opening Mantena's Applications to Adjust Status on February 5, 2018, and declaring that her Applications for Employment Authorization and for Advance Parole were now approved. (See Gov't Ltr. dated Mar. 13, 2018, ECF No. 72, at 1; Decl. of Nelsy de la Nuez, ECF No. 82 ("de la Nuez Decl."), Ex. D, at 1.)

The Government seeks to dismiss Mantena's Second Amended Complaint, arguing that (1) she failed to exhaust administrative remedies; (2) her claims are moot; and (3) there is no final agency determination on her Applications to Adjust Status. Mantena counters that the Government cannot unilaterally strip this Court of jurisdiction by voluntarily re-opening her applications, and that they will once again revoke her Immigrant Petition and deny her other applications if this Court dismisses the case for lack of subject matter jurisdiction.

<u>DISCUSSION</u>

I.  <u>Standard</u>

The Government brings this motion under both Rules 12(b)(1) and 12(b)(6).  As a threshold matter, "whether the APA's 'final agency action' requirement is jurisdictional is an open question in our Circuit."  <u>6801 Realty Co., LLC v. U.S. Citizenship & Immigration Servs.</u>, 719 F. App'x 58, 60 (2d Cir. 2018) (summary order) (citation omitted); <u>see</u> <u>Sharkey v. Quarantillo</u>, 541 F.3d 75, 87 (2d Cir. 2008).  But because, "in most circumstances, it makes little practical difference whether the district court labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)," this Court need not answer that question here.  <u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182, 1188 (2d Cir. 1996).

On a motion to dismiss, a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party.  <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007).  "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).  Moreover, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  As such, a pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  <u>Iqbal</u>, 556 U.S. at 678 (citation omitted).

II.  <u>Exhaustion</u>

"The requirement of administrative exhaustion can be either statutorily or judicially imposed."  <u>Beharry v. Ashcroft</u>, 329 F.3d 51, 56 (2d Cir. 2003).  The Government

concedes that no statute requires exhaustion here. (See Gov't's Mem. of Law in Supp. of Defs.' Mot. to Dismiss for Lack of Jurisdiction or Failure to State a Claim, ECF No. 80 ("Mot."), at 18.) Thus, they ask this Court to employ judicial exhaustion.

But it is hornbook law that APA claims are not subject to exhaustion requirements unless specifically required by statute. See Darby v. Cisneros, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." (emphasis in original)); Sharkey, 541 F.3d at 90 ("[U]nder the APA, '[c]ourts are not free to impose an exhaustion requirement unless the specific statutory scheme at issue imposes such a requirement.'" (alteration in original) (quoting Air Espana v. Brien, 165 F.3d 148, 151 (2d Cir. 1999)); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("With regard to cases governed by the [APA], such as the case at bar, the Supreme Court has instructed that if Congress has not enacted an explicit exhaustion requirement, courts may not exercise their judicial discretion to impose one.").

Since no such statutory prescription exists, there is no exhaustion requirement.

III. Mootness

The Government argues that Mantena's action is moot because she received her requested relief—i.e., USCIS granted her Applications for Employment Authorization and for Advance Parole and re-opened her Applications to Adjust Status. Mantena contends that mootness does not apply because the Government cannot voluntarily moot a case and strip this Court of its jurisdiction where the Government's conduct is likely to recur.

"Article III, Section 2 of the United States Constitution limits federal court jurisdiction to actual cases and controversies." Freedom Party of N.Y. v. N.Y. State Bd. of Elections, 77 F.3d 660, 662 (2d Cir. 1996) (quotation mark omitted). Thus, mootness comes into play "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quotation marks omitted). More specifically, "[a] case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir.1998)); Myers Indus., Inc. v. Schoeller Arca Sys., Inc., 171 F. Supp. 3d 107, 116 n.10 (S.D.N.Y. 2016). Courts will not hear an "abstract dispute about the law [that is] unlikely to affect . . . plaintiffs any more than it affects other [ ] citizens." Alvarez v. Smith, 558 U.S. 87, 93 (2009). Accordingly, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983). The Government is correct that no active dispute exists. But what muddies the waters is whether "there is no reasonable expectation that the alleged violation will recur." Van Wie, 267 F.3d at 113.

   "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 174 (2000). In other words, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Nike, 568 U.S. at 91. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." Nike, 568 U.S. at 91.

Doing so would "leave [t]he defendant free to return to his old ways." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n.10 (1982) (quotation marks omitted, alteration in original). Thus, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc., 528 U.S. at 189 (quotation marks and citation omitted); see City of Mesquite, 455 U.S. at 289.

"Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Nike, 568 U.S. at 91 (quoting Friends of the Earth, Inc., 528 U.S. at 190); see Friends of the Earth, Inc., 528 U.S. at 189 ("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (alteration in original) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968))). Moreover, courts are reluctant "[t]o abandon the case at an advanced stage [which] may prove more wasteful than frugal." Friends of the Earth, Inc., 528 U.S. at 191–92.

As it stands, this Court cannot provide the relief requested: the Applications for Employment Authorization and for Advance Parole have been granted, the Applications to Adjust Status have been re-opened, and the Government states that it will not make a final decision on those applications until the "final adjudication of the appeal associated with the underlying" VSG Immigrant Petition. (See de la Nuez Decl., Ex. D at 2.) But the Government continues to play a cat-and-mouse game with Mantena, perpetually leaving her—and this Court—one step behind. Mantena is thus stuck in a catch-22. When she needs district court review, the Government "moots" her case by reopening her applications. When her applications

are re-opened and she no longer needs review, the Government revokes her petition and denies her applications.

Ultimately, though, the Government has not met its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Nike, 568 U.S. at 91 (quotation marks omitted). It has revoked the same VSG Immigrant Petition three times, re-opened cases sua sponte twice during the pendency of this action, and re-opened another time in view of the Second Circuit reversal. Indeed, Mantena has amended her Complaint twice in a Sisyphean effort to try to keep up with the Government's antics. And only nine days after Mantena filed her Second Amended Complaint, the Government reversed course once again and sought to moot the case.

IV.     Finality

The Government next argues that Mantena has failed to meet the APA's "finality" requirement. "Under the APA, agency action is subject to judicial review [only] if it is either made reviewable by statute or if it is final agency action for which there is no other adequate remedy in a court. [Mantena] does not point to any statute entitling [her] to judicial review of USCIS's actions in this case. Thus, judicial review is available only if [she] seeks review of final agency action." 6801 Realty Co., LLC v. U.S. Citizenship & Immigration Servs., 2016 WL 7017354, at *2 (E.D.N.Y. Nov. 30, 2016), aff'd, 719 F. App'x 58 (2d Cir. 2018) (citing 5 U.S.C. § 704); see Sharkey, 541 F.3d at 87 ("[R]eview under the APA is limited to review of 'final agency action.'").

"[T]wo conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or

obligations have been determined, or from which legal consequences will flow." Salazar v. King, 822 F.3d 61, 82 (2d Cir. 2016) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). Simply put, "[t]he core question for determining finality is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Sharkey, 541 F.3d at 88 (quotation marks omitted). Thus, an agency decision is final only if "the agency has rendered its last word on the matter." U.S. Gypsum Co. v. Muszynski, 161 F. Supp. 2d 289, 291 (S.D.N.Y. 2001). "One clear indication that an agency has issued its last word on a subject is that no further agency decisionmaking can be expected." 6801 Realty Co., LLC, 2016 WL 7017354, at *3.

"The Supreme Court has interpreted the finality element in a pragmatic way," Sharkey, 541 F.3d at 88 (quotation marks omitted), "focusing on whether judicial review at the time will disrupt the administrative process." Bell v. New Jersey, 461 U.S. 773, 779 (1983). "The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." Sackett v. EPA, 566 U.S. 120, 127 (2012).

Typically, courts hold that agency action is "non-final" where an agency "re-opens" its proceedings, especially in the immigration context. See, e.g., 6801 Realty Co., LLC, 2016 WL 7017354, at *3. However, courts often tie these decisions to whether an agency requests more evidence and actually conducts further investigation upon re-opening. See 6801 Realty Co., LLC, 2016 WL 7017354, at *1, *3–4 (holding that "the decision to deny the plaintiff's H-1B petition, now reopened for consideration, [wa]s no longer final" because the agency "actually reopened" the case and requested more evidence); True Capital Mgmt., LLC v. U.S. Dep't of Homeland Sec., 2013 WL 3157904, at *4 (N.D. Cal. June 20, 2013) (holding that

an agency action was "non-final," but noting that "[t]his result is warranted given that the [re-opening] does appear to seek additional information"); German Language Ctr. v. United States, 2010 WL 3824636, at *3 (S.D. Tex. Sept. 27, 2010) (holding that a decision on a visa petition was no longer final because the agency decision "ha[d] been set aside by USCIS, . . . the proceedings ha[d] been reopened, and [plaintiff] ha[d] been invited to provide additional evidence").

The Second Circuit's summary order in 6801 provides valuable insight into why courts typically hold that re-opened cases are non-final. There, the Second Circuit affirmed the district judge's finding that USCIS's decision was "non-final" because "[t]he reopening was not an informal revision that offered a mere possibility of success; USCIS actually reopened the decision and actively sought new evidence. Nor was the agency's action inappropriate. It identified issues with the original decision and areas that warranted further evidentiary development. As a result, USCIS's decision to reopen nullified the prior denial and left nothing for the district court to review." 6801 Realty Co., LLC, 719 F. App'x at 60.

The same does not hold true here. In USCIS's written decision to re-open the Applications to Adjust Status, it stated that it "moves to again reopen" the Applications "[a]s a matter of discretion." (de la Nuez Decl., Ex. D at 1.) USCIS did not "identif[y] issues with the original decision and areas that warranted further evidentiary development." 6801 Realty Co., LLC, 719 F. App'x at 60. Nor did USCIS request more evidence or set forth any way in which it would investigate further. (de la Nuez Decl., Ex. D at 1; July 19, 2018 Oral Arg. Tr., ECF No. 86 ("Tr."), 16:4-6 ("[The Court:] Have they asked for more information? [Government Counsel:] Your Honor, not yet.").) Indeed, at oral argument, the Government conceded that USCIS was doing no further work on the Application to Adjust Status, because "it would be . . .

a waste of resources if they would do something before the appeal." (Tr. 8:11-16.) Counsel further conceded that "[t]he only reason the I-485 is reopened is because the appeal is pending with respect to the I-140." (Tr. 7:23-25.) Moreover, the circumstances of reopening are suspect. In addition to the Government's revocation of the VSG Immigrant Petition on three separate occasions, the Government's most recent decision to "re-open" the Applications to Adjust Status was made just nine days after Mantena filed her Second Amended Complaint. (See de la Nuez Decl., Ex. D.)

Ultimately, the Government has re-opened Mantena's case in name only. Therefore, this Court finds the agency action to be final. See Otero v. Johnson, 2016 WL 6476292, at *8 (D. Ariz. Nov. 2, 2016) (holding that there was a likelihood of success on the merits that plaintiff could establish subject matter jurisdiction where USCIS re-opened an Application to Adjust Status because "an agency may not divest a federal court of jurisdiction by unilaterally reopening its administrative proceedings").

CONCLUSION

For the foregoing reasons, the Government's motion to dismiss the Second Amended Complaint is denied. However, because this Court cannot provide relief at the moment, this action is stayed. If the Government has not resolved the VSG Immigrant Petition appeal by November 16, 2018, this Court will convene a status conference on that date at 2:00 p.m. The Clerk of Court is directed to terminate the motion pending at ECF No. 79.

Dated: August 7, 2018
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.